IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


Kenneth Marshall,                    :

            Plaintiff,        : Case No.  2:14-cv-338

      v.                      :

Ohio Department of Rehabilitation: JUDGE MICHAEL H. WATSON
& Corrections, et al.,            Magistrate Judge Kemp

            Defendants.       :


## REPORT AND RECOMMENDATION

This matter is before the Court on the combined motion for
judgment on the pleadings and motion for summary judgment filed
by defendants.  Plaintiff Kenneth Marshall has filed a response.
Defendants have not filed a reply and the motion is now ripe for
decision.  For the following reasons, the Court will recommend
that the motion for judgment on the pleadings be granted, in part
and denied, in part.  Further, the Court will recommend that the
motion for summary judgment be granted.

## I.  Background

Mr. Marshall is a former state prisoner who has brought this
action pursuant to 42 U.S.C. §1983.  The background and
procedural history of this case have been explained in previous
orders of this Court and will not be repeated here.  As the Court
has previously discussed, the operative complaint in this case is
comprised of Docs. 78 and 83.  These documents relate to Mr.
Marshall's incarceration at the Pickaway Correctional Institution
and appear to be his attempt to raise a claim relating to the
denial of medical care, including mental health treatment and
treatment for pain arising from a spinal cord injury, in
violation of the Eighth Amendment, and a claim for the denial of

access to the courts in violation of the First Amendment.  Based
on the Court's review of these filings, Mr. Marshall's
allegations can be summarized as follows.

In Document 78, with respect to the issue of medical
records, Mr. Marshall asserts that Elice Payenter, Mrs./Ms.
Jackie, Missy Rousch, Heather Hagan, and Dr. Hale withheld
medical records necessary for effective treatment of his medical
conditions.  Libby Dillinger provided Ms. Payetner and Mrs.
Jackie with addresses.

Further alleging a violation of his Eight Amendment rights,
Mr. Marshall states that Director Mohr, Dr. Eddy and Mr. Gardner
have instituted a policy, custom or practice of denying inmates
narcotic pain medication.  Mr. Marshall explains that he has
suffered with pain, determined by OSU to be intractable, since
2013.  According to Mr. Marshall, he is required to take pain
medication in conjunction with the use of an electronic device
placed near his spinal cord.

Additionally, Mr. Marshall contends that Dr. Eddy, Mr.
Gardner and Mrs. Rousch have denied him medical care, including
specifically an MRI and a CAT-scan.  Mr. Marshall asserts that
this denial was an effort to delay medical treatment, and
specifically, treatment at a spinal cord center.

Mr. Marshall also states that, with respect to his mental
health issues, he has been denied "Wellbutin" and panic
medications.  He does not identify any defendant responsible for
this alleged denial in Doc. 78.

With respect to his First Amendment claim for a denial of
access to the courts, Mr. Marshall states that he wrote to
Director Mohr and as a result, Director Mohr has an "awareness"
of this denial and resulting prejudice.  Mr. Marshall further
asserts that the "policy, practice, and custom of the
administrative hierarchy" have denied him access to the courts as

a result of his poverty. Mr. Marshall also contends that Mrs. Stewart and Pat Brown have failed to process cash transactions and this has resulted in his procedural default.

Finally, in Doc. 85, Mr. Marshall asserts that he suffers from anxiety and panic attacks and that "Mental-Health Director; Dr. Kennedy, Nurse Practioner: Mrs./Ms. Nicole McKraken; Nurse, Josh, and Mrs./Ms. Kite ... of the mental health-department" have intentionally withheld his "psychotrophic medication" in an effort to harm him "for seeking review of his treatment, or lack thereof." Both documents indicate that Mr. Marshall is suing all defendants in their official and individual capacities.

For purposes of the current motion, the following defendants have been served with Mr. Marshall's currently operative complaint and filed an answer: (1) ODRC; (2) ODRC Director Gary Mohr; (3) ODRC Medical Director Dr. Andrew Eddy; (4) Health Information Technician Elice Paynter; (5) Medical Operations Manager/Health Care Administrator Mary Roush; (6) Nurse Supervisor Heather Hagan; (7) Chief Medical Officer Dr. Arthur Hale; (8) Nurse Supervisor Lizabeth Dilley; (9) Regional Certified Nurse Practitioner John Gardner; (10) Financial Associate Deborah Stewart; (11) Business Associate III Margaret Brown; (12) Psychiatric Supervisor Dr. Wayne Kennedy; (13) Certified Nurse Practitoner Nicole McCrackin; and (14) Psychiatric Assistant Ashley Kight. All of these defendants have joined in the current motion.

Other defendants named in Mr. Marshall's various filings have been dismissed on motion, dismissed by operation of Mr. Marshall's amendments, or have not been served.

## II. Defendants' Motion for Judgment on the Pleadings

Defendants assert that are entitled to judgment on the pleadings because the Eleventh Amendment bars any claims for money damages against the ODRC or any prison officials named in

their official capacities.  Further, they contend that any claims against them in their individual capacities must be dismissed because Mr. Marshall has failed to meet minimal pleading standards and, as a result, has failed to state a claim upon which relief can be granted.  Mr. Marshall's response does not address these arguments.  Rather, as will be explained in more detail below, the focus of Mr. Marshall's response is limited to the issue of exhaustion.

## A. Legal Standard

A motion for judgment on the pleadings filed under Fed.R.Civ.P. 12(c) attacks the sufficiency of the pleadings and is evaluated under the same standard as a motion to dismiss. Amersbach v. City of Cleveland, 598 F.2d 1033, 1038 (6th Cir. 1979).  In ruling upon such motion, the Court must accept as true all well- pleaded material allegations of the pleadings of the opposing party, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment.  Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 479 F.2d 478, 480 (6th Cir. 1973).  The same rules which apply to judging the sufficiency of the pleadings apply to a Rule 12(c) motion as to a motion filed under Rule 12(b)(6); that is, the Court must separate factual allegations from legal conclusions, and may consider as true only those factual allegations which meet a threshold test for plausibility.  See,e.g., Tucker v. Middleburg-Legacy Place, 539 F.3d 545 (6th Cir. 2008), citing, inter alia, Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). Further, as always, pro se complaints are to be construed liberally in favor of the pro se party.  See Haines v. Kerner, 404 U.S. 519, 520 (1972).  It is with these standards in mind that the motion for judgment on the pleadings must be decided.

## B. Analysis

To the extent that Mr. Marshall asserts any claim for

damages against the defendants in their official capacities, defendants are correct that they are entitled to Eleventh Amendment immunity. The Eleventh Amendment to the United States Constitution bars suits against either a state or agencies of a state by citizens of that state. Edelman v. Jordan, 415 U.S. 651 (1974). Under certain circumstances, a suit against an individual state official may nonetheless be deemed to be a suit against the state and therefore barred by the Eleventh Amendment. The primary test for determining whether the state is the real party in interest in a suit is whether the source of any funds from which a damage award would be paid would be the state treasury. Edelman, supra. Suits against state officials in their official capacities are deemed to be suits against the state, so that a damage award would run against the state treasury, exactly the relief barred by the Eleventh Amendment. Kentucky v. Graham, 473 U.S. 159 (1985). Additionally, if an individual is alleged to have only vicarious liability as a result of his official position, any damage award made (if one were permissible) would necessarily be against the office rather than the officeholder and therefore be an award against the state. See Ford Motor Co. v. Department of the Treasury, 323 U.S. 459 (1945); see also Hall v. Medical College of Ohio, 742 F.2d 299 (6th Cir. 1984), cert. denied 469 U.S. 1113 (1985). When a suit is barred by the Eleventh Amendment, the Court lacks jurisdiction over it and it must be dismissed without prejudice. Cf. Gwinn Area Comm. Schools v. State of Michigan, 741 F.2d 840, 846-47 (6th Cir. 1984). Consequently, any claim asserted by Mr. Marshall for monetary relief against the ODRC or other defendants in their official capacities must be dismissed under the Eleventh Amendment. Further, to the extent that Mr. Marshall's amended complaint could be read as asserting any claim for injunctive relief against any defendants in their official capacities, such

a claim would be moot as a result of Mr. Marshall's release from prison on December 10, 2015.  <u>See</u> <u>Kensu v. Haigh</u>, 87 F.3d 172, 175 (6th Cir. 1996).

Turning to the issue of Mr. Marshall's failure to satisfy minimal pleading requirements, certainly, in order to survive a motion to dismiss or a motion for judgment on the pleadings, a complaint must contain factual allegations sufficient to "raise the claim above the speculative level." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).  Conclusory allegations without specific facts do not state a claim under §1983.  <u>Id</u>.; <u>see also Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice").

Here, as defendants assert, some of Mr. Marshall's allegations can be characterized fairly as general assertions lacking in sufficient specificity to meet minimal pleading requirements.  For example, to the extent Mr. Marshall is attempting to assert a First Amendment access to the courts claim, he does not identify with any detail the actions of any defendant that specifically resulted in this alleged denial. He merely states that he wrote to Director Mohr to make him aware of the issue.  To the extent that Mr. Marshall's allegations that Ms. Stewart and Pat Brown refused to process cash transactions resulting in his procedural default of cases in this Court could form the basis of an access to the courts claim, he does not identify which specific cases or suggest actual injury by asserting that the claims at issue were non-frivolous.  <u>See</u> <u>Brown v. Matauszak</u>, 415 Fed.Appx. 608, 612 (6th Cir. 2011). Consequently, the motion for judgment on the pleadings will be granted as to Mr. Marshall's access to the courts claim.

Beyond this claim, however, the focus of Mr. Marshall's amended complaint is that he was denied medical treatment and

pain medication either directly by the actions of certain specific defendants or as a result of policies implemented by specific defendants in violation of the Eighth Amendment. To establish an Eighth Amendment violation, a prisoner must show that he or she has a serious medical condition and that the defendants displayed a deliberate indifference to his or her health. Estelle v. Gamble, 429 U.S. 97 (1976); Wilson v. Seiter, 501 U.S. 294 (1991). This formulation has both a subjective and an objective component. Objectively, the medical condition at issue must be "serious" as opposed to "trivial," "minor," or "insubstantial." Subjectively, the defendants accused of violating the Eighth Amendment must have acted with a state of mind that can accurately described as "deliberate indifference."

While the complaint is not highly detailed, Mr. Marshall's allegations indicate that he endures pain relating to a spinal condition and that he suffers from anxiety. Further, his allegations, construed broadly as the Court is required to do, state that, in addition to the denial of pain medication, he was denied tests or records necessary for the proper treatment of his spinal condition. He also identifies specific defendants responsible for denying him his psychotropic medication necessary to treat his anxiety and panic attacks.

At the pleading stage, these allegations are not so insufficient as to warrant dismissal. Rather, they are enough to distinguish the circumstances of this case from the circumstances of Chapell v. Morgan, 2016 WL 738098 (S.D. Ohio Feb. 25, 2016), adopted and affirmed 2016 WL 1109093 (S.D. Ohio March 21, 2016), relied upon by the defendants. In that case, the plaintiff alleged only a general pattern of assaultive behavior without any details, including specific instances of assault or the identities of alleged assailants. Here, Mr. Marshall has identified his medical conditions, specific forms of medical treatment he alleges he was denied or that were delayed

as a result of the actions or policies of specific defendants, and the harm he allegedly endured. Consequently, the motion for judgment on the pleadings will not be granted on Mr. Marshall's Eighth Amendment claim as it is directed to Ms. Paynter, Ms. Roush, Ms. Hagan, Dr. Hale, Dr. Eddy, Mr. Gardner, Director Mohr, Dr. Kennedy, Ms. McCrackin, and Ms. Kight.

This is not the case, however, with respect to Ms. Dillinger. Mr. Marshall's only allegation directed to Ms. Dillinger is found in Doc. 78 at page 3 and states: "Defendant Libby Dillinger provided the medical records personnel 1) Payetner and 2) Mrs. Jackie with these addresses in front of me. [on this matter, I've direct evidence]." This allegation contains no facts suggesting that Ms. Dillinger acted with deliberate indifference toward Mr. Marshall's medical conditions. Consequently, the motion for judgment on the pleadings will be granted as to Mr. Marshall's Eighth Amendment claim directed to Ms. Dillinger.

### III. Defendants' Motion for Summary Judgment

In support of their request for summary judgment, defendants explain that Mr. Marshall has failed to exhaust his administrative remedies with respect to any claims. On this point, they have submitted Mr. Marshall's grievance history, specific grievance documents and an affidavit from Eugene Hunyadi, the Assistant Chief Inspector with the ODRC assigned to the region in which Pickaway Correctional Institution is located. Mr. Hunyadi handles inmate appeals and direct grievances and is the custodian of these records indexed by inmate name and number.

Based on this evidentiary material, defendants explain that Mr. Marshall began serving his sentence on November 1, 2013, and was released from prison on December 10, 2015. During this time, Mr. Marshall was confined at the Corrections Reception Center and then the Pickaway Correctional Institution. In this

approximately two-year time period, Mr. Marshall filed 73 informal complaint resolutions but completed all three steps of the applicable grievance procedures set forth in Ohio Administrative Code §5120-9-31 with respect to only seven of them.  Defendants contend that none of these seven, however, were exhausted in accordance with the provisions of OAC §5120-9-31.

Specifically, defendants assert that Mr. Marshall has failed to properly exhaust for two reasons.  First, they contend that he failed to name any defendants or provide sufficient factual context in his grievances to allow them to be put on notice of his claims.  Further, they assert that Mr. Marshall did not adhere to the timeliness requirements of the established grievance process.  According to defendants, there is only one instance where Mr. Marshall's lack of timeliness was waived but that grievance relates to Mr. Marshall's confinement at the CRC and not at Pickaway.

Mr. Marshall's response states in its entirety:

**I.**  The plaintiff did exhaust, when allowed.  He even redirected when necessary.

**II.**  The plaintiff believes ***the inordinate delays*** that he was subjected to violate the **U.S. Constitution**.

**III.**  **See TERRANCE V. NORTHVILLE REGIONAL PSYCHIATRIC HOSPITAL Findlaw, caselaw.findlaw.com United States US 6th Cir. ... US 6th Circuit TERRANCE v. NORTHVILLE REGIONAL PSYCHIATRIC HOSPITAL.  Read the full decision on FindLaw.... v. NORTHVILLE REGIONAL PSYCHIATRIC HOSPITAL...**

**IV.**  This plaintiff grieved everything that had no impediments, See Responsive Pleading, along with evidence submitted of ***(462) four-hundred sixty two pages.***

**V.**  Upon the plaintiffs release he has had surgeries that the Defendant(s) should have done.
The Plaintiff's issues are fully exhausted and are ripe for this court of the Sixth Circuit for review.  The

Plaintiff's **U.S.C.A. CONST. AMEND.8 and 14th CONSTITUIONAL** (sic) **RIGHTS HAVE BEEN VIOLATED** BY THE DEFENDANT(S) ACTION OR INACTIONS.

This response is unaccompanied by any evidentiary materials. The Court notes that Mr. Marshall captions what appears to be his certificate of service as an affidavit. He includes this introductory sentence: "I, Ken Marshall, the affiant swear that the following statements are true to the best of my knowledge and belief pursuant to 28 U.S.C. & 1746 et seq." Mr. Marshall then swears the details of his service on defense counsel.

A.  Legal Standard

Summary judgment is not a substitute for a trial when facts material to the Court's ultimate resolution of the case are in dispute. It may be rendered only when appropriate evidentiary materials, as described in Fed. R. Civ. P. 56(c), demonstrate the absence of a material factual dispute and the moving party is entitled to judgment as a matter of law. Poller v. Columbia Broadcasting Systems, Inc., 368 U.S. 464 (1962). The moving party bears the burden of demonstrating that no material facts are in dispute, and the evidence submitted must be viewed in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970). Additionally, the Court must draw all reasonable inferences from that evidence in favor of the nonmoving party. United States v. Diebold, Inc., 369 U.S. 654 (1962). The nonmoving party does have the burden, however, after completion of sufficient discovery, to submit evidence in support of any material element of a claim or defense on which that party would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact. See Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). Of course, since "a party seeking

summary judgment ... bears the initial responsibility of
informing the district court of the basis for its motion, and
identifying those portions of [the record] which it believes
demonstrate the absence of a genuine issue of material fact,"
Celotex, 477 U.S. at 323, the responding party is only required
to respond to those issues clearly identified by the moving party
as being subject to the motion.  It is with these standards in
mind that the instant motion must be decided.

B.  Analysis

The Court of Appeals recently addressed the issue of
exhaustion, explaining:

>     The Prison Litigation Reform Act requires state
> prisoners to follow and exhaust all applicable state
> grievance procedures before filing suit in federal
> court.  See 42 U.S.C. 1997e(a); Woodford v. Ngo, 548
> U.S. 82, 90, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006).
> This requirement is not jurisdictional; rather,
> exhaustion is an affirmative defense that must be
> pleaded and proved by the defendants.  Jones, 549 U.S.
> at 212, 127 S.Ct. 910.  When the defendants in prisoner
> civil rights litigation move for summary judgment on
> administrative exhaustion grounds, they must prove that
> no reasonable jury could find that the plaintiff
> exhausted his administrative remedies.  Surles v.
> Andison, 678 F.3d 452, 455-56 (6th Cir. 2012).
>
>     There is no uniform federal exhaustion standard.
> A prisoner exhausts his remedies when he complies with
> the grievance procedures put forward by his
> correctional institution.  Jones, 549 U.S. at 217-19,
> 127 S.Ct. 910.  "This court requires an inmate to make
> 'affirmative efforts to comply with the administrative
> procedures,' and analyzes whether 'those efforts to
> exhaust were sufficient under the circumstances.'"
> Risher, 639 F.3d at 240 (quoting Napier v Laurel Cty.,
> 636 F.3d 218, 224 (6th Cir. 2011)).

Mattox v. Edelman, – F.3d –, 2017 WL 992510, *4 (6th Cir.
March 15, 2017).

The purpose of the exhaustion requirement "'is to allow
prison officials 'a fair opportunity' to address grievances on

the merits, to correct prison errors that can and should be corrected and to create an administrative record for those disputes that eventually end up in court.'" Id. at *5 quoting Reed-Bey v. Pramstaller, 603 F.3d 322, 324-25 (6th Cir. 2010). Requiring inmates to exhaust prison remedies in accordance with State procedures furthers this objective and "'prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation in the process.'" Id., quoting Reed-Bey at 324-325. The Court of Appeals has recognized an exception to this rule when "prison officials waive any procedural irregularities in a grievance" and "nonetheless address the grievance on the merits." Id., citing Reed-Bey at 325.

Ohio utilizes a three-step grievance system for resolving inmate complaints set forth in Ohio Admin. Code §5120-9-31(K). The first step requires an inmate to "file an informal complaint to the direct supervisor of the staff member, or department most directly responsible for the particular subject matter of the complaint." §5120-9-31(K)(1). See also Affidavit of Eugene Hunyadi (Doc. 145-9), at ¶¶5-7. If the inmate is dissatisfied with the result, he may file a formal grievance with the inspector of institutional services at his institution. §5120-9-31(K)(2). If an inmate remains dissatisfied, he may file an appeal to the office of the chief inspector. §5120-9-31(K). An inmate has not exhausted his remedies under §5120-9-31 until he has received a decision on his appeal to the office of the chief inspector. Younker v. Ohio State University Medical Center, 2013 WL 3222902, *4 (S.D. Ohio June 25, 2013).

Further, §5120-9-31(K) requires that informal complaints and grievances set forth specific information, including:

> ... dates, times, places, the event giving rise to

the complaint and, if applicable, the name or names of
personnel involved and the name or names of any
witnesses.... In the event an inmate does not know the
identity of the personnel involved, a "John/Jane Doe"
complaint may be filed. However, the complaint shall
be specific as to dates, times, places, physical
descriptions of any unidentified personnel and the
actions of said personnel giving rise to the complaint.

The exhaustion requirement applies to Mr. Marshall even
though he was released from incarceration in December, 2015. <u>Cox
v. Mayer</u>, 332 F.3d 422, 425 (6th Cir. 2003)(exhaustion
requirement applies to a plaintiff confined at the time he files
a complaint regardless of whether he is subsequently released).

Defendants have submitted seven exhibits that they have
identified as demonstrating the instances where Mr. Marshall
completed all three steps of the grievance procedure according to
their records. A review of these documents and Mr. Hunyadi's
affidavit in support reveals that four of these exhibits cannot
be construed as relating in any way to Mr. Marshall's Eighth
Amendment claim currently before the Court. These exhibits
include Exhibit 2 relating to programming complaints and the
classification system (PCI-07-15-000103); Exhibit 3 relating to
overcrowding and long lines for access to medication (PCI-07-15-
000080); Exhibit 5 relating to access to the courts and
censorship of legal mail (PCI-07-14-000085); and Exhibit 8
relating to legal mail (CRC-01-14-000004). The remaining three
exhibits contain grievances filed by Mr. Marshall that appear to
address issues similar to those he raises in his amended
complaint and can be briefly summarized as follows.

1. <u>Exhibit 4 - PCI 10-14-000127</u>

Defendants' Exhibit 4 contains an informal complaint
completed by Mr. Marshall and dated September 15, 2014. This
complaint contended that Nurse Mindy retaliated against him and
denied him medical care. This complaint was denied on September

16, 2014.

Following the denial of his informal complaint, Mr. Marshall filed a notification of grievance with the inspector of institutional services. This document is dated October 1, 2014. Mr. Marshall reiterated complaints about Nurse Mindy and stated that she prevented him from seeing an advanced level provider for "meaningful imaging" such as a CAT-scan or MRI. The inspector denied this grievance on October 27, 2014, stating in part "Your grievance is denied insufficient evidence to support that allegation of retaliation and denial of medical services."

Mr. Marshall filed an appeal to the chief inspector date-stamped as received on November 14, 2014. Mr. Marshall continued to complain about the actions of Nurse Mindy retaliating against him and denying him access to the doctor. The chief inspector denied Mr. Marshall's appeal on December 10, 2014, stating, in part, "the medical staff at your facility is giving you the proper care within ODRC guidelines."

## 2. Exhibit 6 - PCI-05-14-000106

Defendants' Exhibit 6 contains an informal complaint completed by Mr. Marshall October 26, 2014. This complaint stated that Mr. Marshall believed he was being denied medical care and was subjected to deliberate indifference and negligence pursuant to ODRC's internal policy and protocol relating to a central disk portrusion, spinal cord deformity, and a lumbar puncture. He objected to the manner in which his spinal cord stimulator was adjusted. He also contended that he had been denied his medical records. Mr. Marshall did not identify anyone responsible for these issues. This complaint was denied on April 30, 2014.

On May 11, 2014, Mr. Marshall filed a notification of grievance with the institutional inspector. He stated that he still had not received imaging of his cervical discs, had not

been supplied with a copy of a Health Insurance Portability and Accountability Acts document, and that staff may retaliate against him for use of the inmate grievance procedure. He again did not identify anyone responsible for these issues. The inspector denied this grievance on May 15, 2014.

Mr. Marshall's appeal to the chief inspector is date-stamped as received on June 10, 2014. In this appeal, Mr. Marshall stated that, despite his having completed multiple HIPAA forms, he still had not been permitted to view the records requested. The chief inspector denied Mr. Marshall's appeal, stating "In your Appeal to the Chief Inspector ... you make complaints that I don't understand. It is vague and wanders in its presentation and was filed untimely per AR-5120-9-31. But I will complete a cursory review of your current medical care to determine if there are any inconsistencies."

### 3. Exhibit 7 – CRC-01-14-000019

Exhibit 7 contains an informal complaint dated November 13, 2013, while Mr. Marshall was incarcerated at CRC. This complaint relates to Mr. Marshall's arrival at CRC on November 1, 2013, and his attempt to show staff his medical records indicating his multiple sclerosis diagnosis, his electronic wiring for his spinal cord, and a possible leukemia diagnosis. He also asserted that he was on medication for pain and mental health conditions and that he had not received any of those medications as of the date of his complaint. Instead, he was forced to detox upon his arrival at CRC. He states that he has contacted the "Warden, Health Care Administrator, Doctor Major Smith." Mr. Marshall's informal complaint was denied on November 19, 2013.

Mr. Marshall completed a notification of grievance dated December 31, 2013, in which he made similar complaints about the denial of his medications and his need for treatment relating to his other conditions. This grievance was denied by the

institutional inspector on January 17, 2014. The denial stated, in part, ""AR5120-9-31 Inmate Grievance Procedure states in part, you have 14 days from the response of the informal complaint resolution (ICR) to file a NOG, only information in the ICR can be addressed in the NOG and ICR's should address multiple issues. Based on the seriousness of your allegation I will waive the timeframe for filing the NOG. ... As there is insufficient evidence to support your allegation, the grievance is denied."

Mr. Marshall's appeal to the Chief Inspector is dated February 15, 2014. In his appeal, Mr. Marshall stated that when he arrived at CRC, he was denied his narcotic pain medication and subjected to detox even though he provided copies of his medical records. He described this as a dangerous practice or policy of medical detoxification. He did not identify anyone responsible for these alleged activities. The chief inspector denied Mr. Marshall's appeal on March 17, 2014. This denial stated, in part: "... just as you were told by the inspector, you filed your appeal untimely also. The response from the inspector to your grievance is dated 1-17-14 and your appeal is dated 1-15-14 which is untimely per AR-5120-9-31 and its wasn't received by the Chief Inspector's Office until 2-22-14."

In summary, these three exhibits indicate the following in terms of Mr. Marshall's claims presented here. With respect to Mr. Marshall's claims against Director Mohr, Dr. Eddy and Mr. Gardner relating to a policy, custom or practice of denying inmates pain medication, nowhere in the specific identified grievances does Mr. Marshall mention these defendants or any formal or informal policy they have implemented relating to denying inmates narcotic pain medication. At most, in Exhibit 7, Mr. Marshall notes that he has been denied medications subject to a dangerous practice or policy.

Further, to the extent Mr. Marshall contends that Dr. Eddy,

Mr. Gardner and Mrs. Rousch have denied him necessary tests including an MRI and a CAT-scan, none of these defendants are mentioned in any of the relevant grievance documents. Moreover, to the extent that Mr. Marshall specifically mentions his need for a CAT-scan or MRI, that allegation is directed to Nurse Mindy as indicated in Exhibit 4. As defendants note, Mr. Marshall has not named Nurse Mindy as a defendant.

Similarly, to the extent Mr. Marshall contends that he is being denied medication for his mental health conditions, none of the relevant exhibits address this claim as it relates to the named defendants. Mr. Marshall makes brief mention that he had been denied mental health medications in his informal complaint contained in Exhibit 7, but this document relates to his time at CRC. Additionally, this statement is made without elaboration and in the context of a lengthy and rambling compilation of numerous and varied complaints. Moreover, according to Mr. Marshall's allegations and service documents, the named defendants in Mr. Marshall's amended complaint alleged to have denied him this medication are employed at PCI.

The final issue Mr. Marshall raises in his amended complaint is that defendants Elice Payenter, Missy Rousch, Heather Hagan and Dr. Hale have withheld his medical records in an attempt to deny him effective treatment for his medical conditions. While some of Mr. Marshall's grievance documents suggest that he has been denied access to his medical records, none of these defendants are identified as responsible for this alleged denial.

"Although 'exhaustion is not per se inadequate simply because an individual later sued was not named in the grievances,' ... a plaintiff generally fails to exhaust administrative remedies by failing to include an official's name in a grievance if it is required by the applicable grievance procedures." Hall v. Warren, 443 Fed.Appx. 99, 106 (6th Cir.

2011), quoting <u>Jones v. Bock</u>, 549 U.S. 199, 218 (2007). The relevant grievance policy requires a plaintiff to identify the individuals involved or name a John/Jane Doe and "provide physical descriptions of any unidentified personnel and the actions of said personnel giving rise to the complaint." §5120-9-31(K). Mr. Marshall failed to comply with this requirement.

Beyond this, the grievance policy requires an inmate to provide factual context including dates, times and places. Again, Mr. Marshall failed to provide this information.

Ultimately, however, the Court of Appeals requires that prison grievances provide "fair notice" of a potential claim. <u>LaFountain v. Martin</u>, 334 Fed.Appx. 738, 740 (6th Cir. 2009), citing <u>Bell v. Konteh</u>, 450 F.3d 651, 654 (6th Cir. 2006). Examining Mr. Marshall's specific grievances a different way, only Exhibit 6 arguably relates to the claims in his complaint. As noted Exhibit 4 relates to an individual not named as a defendant in this case and Exhibit 7 relates to conditions at CRC. In Exhibit 6, Mr. Marshall makes brief reference to his need for "New Imaging, MRI." Further, he states that he is being denied his medical records relating to care he received from outside sources prior to his incarceration.

The Court of Appeals has found that such general notice is not adequate to demonstrate exhaustion "because it would effectively collapse the PLRA's exhaustion requirement." <u>Mattox</u>, 2017 WL 992510, at *10. Rather, "[i]f generalized dissatisfaction with an inmate's medical care were sufficient to exhaust all possible claims related to that care, then prisoners could bring claims in federal court without ever giving prison staff a fair chance to remedy a prisoner's complaints." <u>Id</u>.

Further, to the extent that Exhibit 6 could be construed as providing fair notice of these claims despite Mr. Marshall's failure to identify specific defendants by name or description,

Mr. Marshall still cannot be found to have exhausted his administrative remedies. This is so because his final administrative appeal was untimely given that Mr. Marshall received his decision on his notification of grievance on May 15, 2014, but did not prepare his appeal to the chief inspector until June 6, 2014.

The chief inspector specifically stated that Mr. Marshall's appeal was "filed untimely per AR-5120-9-31." See Doc. 145, Exhibit 6, p. 10. That the chief inspector alternatively completed a cursory review of Mr. Marshall's complaints and determined that he was receiving proper care, does not require the conclusion that Mr. Marshall properly has exhausted his claims. Rather, "[w]here the grievance is denied alternatively on the merits and for failure to comply with critical grievance procedures, a later action will be subject to dismissal for failure to properly exhaust...." Vandiver v. Correctional Medical Services, Inc., 326 Fed.Appx. 885, 889 (6th Cir. 2009).

Mr. Marshall has provided no evidence to the contrary sufficient to raise a genuine issue of material fact as to his exhaustion of his Eighth Amendment claims. This would remain the case even if the Court were to construe Mr. Marshall's statements in his response as having been intended as a sworn declaration. His statement that he exhausted his remedies, without more, is not enough to defeat defendants' properly supported summary judgment motion. See, e.g., Alexander v. CareSource, 576 F.3d 551, 560 (6th Cir. 2009)("Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment").

For all of these reasons, the Court concludes that Mr. Marshall has failed to exhaust his Eighth Amendment claims alleged in his amended complaint. Consequently, the Court will recommend that defendants' motion for summary judgment be granted

and that these claims be dismissed without prejudice for failure
to exhaust.

Additionally, the Court will recommend that Mr. Marshall's
claims against the unserved defendants including Medical Records
Personnel, Mrs. Jackie, the Collegial Review Board, Mental Health
Director, and Nurse Josh be dismissed pursuant to Fed.R.Civ.P.
4(m).

## IV. <u>Recommendation</u>

For the reasons stated above, the Court recommends that the
motion for judgment on the pleadings (Doc. 145) be granted as it
relates to Mr. Marshall's access to the courts claim and his
Eighth Amendment claim directed to Ms. Dillinger.  The Court
recommends that the motion for judgment on the pleadings be
denied as it relates to his Eighth Amendment claims with respect
to Ms. Paynter, Ms. Roush, Ms. Hagan, Dr. Hale, Dr. Eddy, Mr.
Gardner, Director Mohr, Dr. Kennedy, Ms. McCrackin, and Ms.
Kight.  Further, the Court recommends that the motion for summary
judgment (Doc. 145) be granted and that Mr. Marshall's Eighth
Amendment claims be dismissed without prejudice for failure to
exhaust.  Finally, the Court recommends that Mr. Marshall's
claims against unserved defendants Medical Records Personnel,
Mrs. Jackie, the Collegial Review Board, Mental Health Director,
and Nurse Josh be dismissed pursuant to Fed.R.Civ.P. 4(m).

## <u>PROCEDURE ON OBJECTIONS</u>

If any party objects to this Report and Recommendation, that
party may, within fourteen days of the date of this Report, file
and serve on all parties written objections to those specific
proposed findings or recommendations to which objection is made,
together with supporting authority for the objection(s).  A judge
of this Court shall make a <u>de novo</u> determination of those
portions of the report or specified proposed findings or
recommendations to which objection is made.  Upon proper

objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation <u>de novo</u>, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  <u>See Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir.1981).


<u>/s/ Terence P. Kemp</u>
United States Magistrate Judge